IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ALEXANDRA M.,**

      **Plaintiff,**

      **vs.**                                  **CIV NO. 1:24-cv-01140-KRS**

**FRANK BISIGNANO,**
**Commissioner of Social Security Administration,**

      **Defendant.**

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court upon Plaintiff Alexandra M.'s ("Plaintiff") Motion to Reverse and Remand to Agency with Supporting Memorandum, ("Motion"), (Doc. 21), dated June 30, 2025, challenging the determination of the Commissioner of the Social Security Administration ("SSA" or the "Commissioner") that Plaintiff is not entitled to disability benefits she is not entitled to disability benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401–34, 1381–83f. The Commissioner responded to Plaintiff's Motion on August 29, 2025, (Doc. 24), and Plaintiff filed a reply on September 26, 2025, (Doc. 27). Plaintiff filed a Notice of Completion of Briefing that same day. (Doc. 28).

The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); FED. R. CIV. P. 73(b), the Court has considered the parties' filings and has meticulously reviewed the administrative record. Having done so, the Court concludes that the Administrative Law Judge ("ALJ") erred in her decision and will therefore **GRANT** Plaintiff's Motion and **REMAND** this case back to the SSA for proceedings consistent with this

opinion.

## I.    PROCEDURAL POSTURE

On January 5, 2021, Plaintiff filed her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (*See* Administrative Record ("AR") at 233-44, 248-54).[1] Plaintiff alleged an onset date of May 12, 2020, at 42 years and 9 months of age, due to: blind or low vision, PTSD, sleep apnea, hypertension, insomnia, depression, anxiety, morbid obesity, osteoarthritis (both knees), and a tear of medial meniscus in her left knee. (*Id.* at 93, 236). Plaintiff's date last insured, the date through which she could be eligible to receive disability insurance benefits, was December 31, 2017.[2] (*Id.* at 10).

Plaintiff's application was denied at the initial level on February 1, 2022, (*id.* at 10, 93-100), and upon reconsideration on January 30, 2023, (*id.* at 10, 149-56). Plaintiff requested a hearing on February 23, 2023, (*id.* at 100-02), which ALJ Michael Leppala ("ALJ Leppala " or the "ALJ") conducted via videoconference on December 5, 2023, (*id.* at 10, 38-62). Plaintiff was represented by counsel and testified at the hearing, (*id.* at 38-39, 42-57), as did Vocational Expert Gloria Lasoff ("VE"), (*id.* at 38-39, 57-61).

On January 18, 2024, the ALJ issued an unfavorable decision. (AR 7-26). On July 2, 2024, the Appeals Council denied Plaintiff's request for review, (*id.* at 1-6), making the ALJ's decision the Commissioner's final decision. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

On November 7, 2024, Plaintiff timely filed a Complaint seeking judicial review of the

---

[1] Document 11 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page. Notably, multiple documents in the AR state Plaintiff's filing date for DIB as January 6, 2021, instead of January 5, 2021. The Court utilizes January 5, 2021, as the respective date for purposes of this Memorandum Opinion and Order.

[2] To qualify for DIB, a claimant must establish that she met the statutory requirements for disability *on or before* her date last insured. *See Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). In his decision, the ALJ concluded Plaintiff "effectively waived" her DIB claim because her date last insured preceded her alleged onset of disability. (AR at 10).

Commissioner's final decision. (Doc. 1).

## II.    LEGAL STANDARDS

### A.    Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)); *see also* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118 (quotation omitted); or if it "constitutes mere conclusion[,]" *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." (*Id.* at 1262 (citation omitted)). While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (citation omitted), and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." (*Id.* at 1010 (quotation omitted)). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation and citation omitted).

### B.   Disability Framework

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The SSA devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051–52 (10th Cir. 2009); 20 C.F.R. § 404.1520. If a finding of disability or non-disability is directed at any point, the Commissioner will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24; 20 C.F.R. § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) she is not engaged in "substantial gainful activity"; (2) she has "a severe medically determinable physical or mental impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) her impairment(s) meets or equals one of the "Listings" of presumptively disabling impairments; or (4) she is unable to perform his "past relevant work." *Id.* § 404.1520(a)(4)(i–iv) (citing *id.* § 404.1509); *Grogan*, 399 F.3d at 1261.

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [he] can still do despite [physical and mental] limitations." *Id*. § 404.1545(a)(1). Second, the ALJ "determine[s] the physical and mental demands of the claimant's past relevant work." *Winfrey*, 92 F.3d at 1023. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Id.* at 1024 (quoting Social Security Ruling ("SSR") 82-62,

4

1982 WL 31386, at *3 (Jan. 1, 1982)). Third, the ALJ determines whether, in light of the RFC, the claimant is capable of meeting those demands. *Id*. at 1023, 1025.

The claimant must prove that, based on her RFC, she is unable to perform the work she has done in the past. *See Thomas*, 540 U.S. at 25. If the claimant meets "the burden of establishing a *prima facie* case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given his age, education and work experience." *Grogan*, 399 F.3d at 1261 (citation omitted); *see also Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## III.    THE COMMISSIONER'S FINAL DECISION

ALJ Leppala determined at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, May 12, 2020. (AR at 12). At step two, he found Plaintiff had severe impairments of obesity and osteoarthritis. (*Id.*) The ALJ also concluded Plaintiff's physical and mental impairments of hypertension, obstructive sleep apnea, anxiety, depression, schizophrenia were non-severe. (*Id.* at 12-14). The ALJ deduced at step three that Plaintiff's impairments did not meet or equal in severity in any of the listings described in the governing regulations, 20 CFR Part 404, Subpart P, Appendix 1. (*Id.* at 15). ALJ Leppala also found that Plaintiff did not have mental impairments, singly or in combination, that medically met or equaled the listings' criteria. *Id*. Thus, the ALJ proceeded to assess Plaintiff's physical and mental records, prior administrative findings, consultative examiner reports, and Plaintiff's and third-party function reports, and hearing testimony to craft Plaintiff's RFC. Based on his detailed assessment, the ALJ concluded that Plaintiff had:

> the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) and
> 416.967(a) except that she is capable of occasionally lifting and/or carrying 20

pounds, frequently lifting and/or carrying ten pounds, standing and/or walking for 2 hours in an 8-hour workday, and sitting for about 6 hours in an 8-hour workday, all with normal breaks. She is further limited to occasionally climbing ramps or stairs; never climbing ladders, ropes, or scaffolds; occasionally balancing, kneeling, crouching, and crawling; and frequently stooping. The Claimant must avoid all exposure to unprotected heights, dangerous machinery, and moving machinery. She also requires the use of a handheld assistive device for ambulation.

(*Id.* at 15). At step four, ALJ Leppala found Plaintiff was unable to perform her past relevant work as a cashier checker and a corrections officer. (*Id.* at 19). He also made alternative step five findings. (*Id.*) He determined that there were other jobs "that exist[ed] in significant numbers in the national economy" that Plaintiff could perform considering her RFC, age, education, and work experience. (*Id.* at 19-20). Specifically, ALJ Leppala relied upon the VE's testimony to find Plaintiff could perform the requirements of three unskilled sedentary jobs: (1) "Production worker (DOT 734.687-074) sedentary, SVP 2-unskilled; 20,000 jobs nationally;" (2) "Table worker (DOT 739.687-182) sedentary, SVP 2-unskilled; 10,000 jobs nationally;" and (3) "Production inspector (DOT 716.687-030) sedentary, SVP 2-unskilled; 5500 jobs nationally." (*Id.*) ALJ Leppala then confirmed that he "determined that the [VE's] testimony" was "consistent with the information contained in the [DOT]" in accordance with SSR 004p. (*Id.*) He thus concluded that Plaintiff was not disabled from May 12, 2020, through January 18, 2024. (*Id.*)

## IV.    PARTIES' ARGUMENTS

In her Motion, Plaintiff contends remand is warranted for three reasons pertaining to the ALJ's step five conclusions. First, the ALJ failed to resolve a significant conflict between the Dictionary of Occupational Titles ("DOT") and the VE's testimony. (Doc. 21 at 4-5, 10-13). At the disability hearing the VE testified that—based on the ALJ's hypothetical—Plaintiff could perform three sedentary unskilled jobs that exist in significant numbers nationally. (*Id.* at 10). The VE identified those jobs as: (1) "Production worker (DOT 734.687-074) sedentary, SVP 2-

6

unskilled; 20,000 jobs nationally;" (2) "Table worker (DOT 739.687-182) sedentary, SVP 2-unskilled; 10,000 jobs nationally;" and (3) "Production inspector (DOT 716.687-030) sedentary, SVP 2-unskilled; 5500 jobs nationally." (AR at 19-20). The DOT, however, is void of any jobs titled "Production worker" or "Production inspector." (Doc. 21 at 10-11). Moreover, the applicable DOT codes for "Production worker" or "Production inspector" that the VE testified to, and which the ALJ relied upon in formulating his step five conclusions, pertain to "Side-Fastener-Chain Assembler" and "Lens-Block Gauger (Optical Goods)," respectively. (*Id.*) (citing https://occupationalinfo.org/dot_search.html (last visited March 23, 2026); https://occupationalinfo.org/73/739687182.html (last visited March 23, 2026)). Plaintiff reasons that the VE's failure to properly identify the DOT number renders the VE's testimony unreliable as to the number of jobs in the national economy for "Production worker" and "Production inspector." (Doc. 21 at 10-13); (Doc. 27 at 3-5). Further, the ALJ was required to determine if there was a discrepancy in the VE's testimony and the DOT. And, if there was, he was obligated to elicit a reasonable explanation for the discrepancy. Both of which the ALJ did not do here. She argues that the ALJ's errors are not harmless because in relying upon flawed testimony the number of available national jobs is unknown.

In response, the Commissioner contends the VE accurately described the occupations identified at the disability hearing because "production worker and production inspector are broad descriptions." (Doc. 24 at 5-6). And, slide-fastener-chain assembler and lens-block gauger are *specific* types of occupations within the VE's "broad descriptions." (*Id.* at 6). In support, the Commissioner directs the Court to the *Parts of the Occupational Definition*, 1991 WL 645965, to demonstrate how the first three digits of the DOT numbers "groups jobs into 'occupations' based on their similarities." (*Id.*) Next, he contends the *Selected Characteristics of Occupations* ("SCO"),

the DOT's companion publication, similarly codes jobs based on similar identifications. (*Id.*) The specific coding for "Side-Fastener-Chain Assembler" and "Lens-Block Gauger" lumps these specific occupations into divisions that are "industrial" based, which includes "production work and quality control." (*Id.* at 6-7). Hence, even though the VE did not testify to the *exact* DOT title, he did testify to and accurately state the type of occupations, *i.e.*, production work and quality control, under the DOT numbers assigned to "Side-Fastener-Chain Assembler" and "Lens-Block Gauger." (*Id.* at 7).

Plaintiff's second argument on appeal overlaps with her first contention. She claims that ALJ Leppala was required to assess the factors enumerated in *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992) to determine whether work within Plaintiff's restrictions existed in significant numbers in the national economy. (Doc. 21 at 10-11). Instead, the ALJ simply made a boilerplate statement that "there are jobs that exist in significant number in the national economy" purely on the reliance of the VE's testimony. (*Id.* at 11). According to Plaintiff, this too renders the ALJ's error not harmless because ALJ Leppala did not conduct any supporting analysis. And, if he had, he would have discovered that the VE's testimony was inaccurate and required post-hearing interrogatories to resolve the conflict. Plaintiff claims *Mora v. Kijakazi*, No. 21-CV-0189 SMV, 2022 WL 1452737 (D.N.M. May 9, 2022), is factually analogous. (*Id.* at 11-13). In *Mora*, Magistrate Judge Stephan M. Vidmar concluded remand was warranted because the ALJ did not conduct a supporting analysis to determine if 21,600 jobs in the national economy were significant. 2022 WL 1452737, at *8. The *Mora* Court also held that *Trimiar* did not preclude review of national numbers. *Id.* at *19-20.

In turn, the Commissioner first argues that the ALJ's factual finding is entitled to deference under the substantial review standard because it is based on the VE's testimony that three

8

alternative jobs were located throughout the country. (Doc. 24 at 10). Moreover, the majority in this Court has concluded that the *Trimiar* factors only apply to the assessment of jobs in regional economies. (*Id.* at 12) (citing *Laney v. Dudek*, No. 24-541 DHU/JFR, 2025 WL 1447238 (D.N.M. May 19, 2025) (collecting cases) (finding that the "multi-factorial *Trimiar* analysis" is for assessing the numbers of jobs "in the *regional* economy"). The Commissioner notes that ALJ Leppala specifically inquired, and the VE affirmed, that the proffered numbers were based on the national economy. (*Id.*) For these reasons, the Court should decline to follow *Mora*, which represents the minority opinion in this Court. (Doc. 24 at 11-14). Lastly, the Commissioner contends that courts in the Tenth Circuit have found numbers lower than 35,500 jobs to be significant when applying a harmless error analysis and affirming ALJ decisions. (Doc. 24 at 14) (collecting cases). The Commissioner thus asserts that the ALJ was under no obligation to perform a *Trimiar* analysis because the focus here was on national jobs and the Tenth Circuit has repeatedly found numbers far lower than existing in this case were significant without any *Trimiar* analysis. *Id.* Accordingly, the Commissioner request the Court find that the 35,500 jobs correlating to the DOT numbers identified by the VE, and confirmed by the ALJ, constitute substantial evidence to support the ALJ's determination that Plaintiff is not disabled.

Finally, Plaintiff contends the ALJ committed error by failing to resolve a conflict between the RFC limitation to avoid "all exposure" to "moving machinery" and the DOT numbers provided by the VE at the disability hearing. (Doc. 21 at 9-13). Plaintiff does not raise any other issues on appeal.[3]

For the reasons discussed herein, the Court finds that the ALJ failed to resolve an apparent

---

[3] The Commissioner asserts Plaintiff's narrow arguments on appeal are limited to Step Five of the Sequential Evaluation Process ("SEP") and ALJ Leppala's reliance on the VE's testimony thereto. He thus contends Plaintiff has waived any arguments pertaining to the ALJ's findings in step one through four of the SEP. (Doc. 24 at 4-5) (citing *Anderson v. Dep't of Labor*, 422 F.3d 1155, 1174, 1182 n.51 (10th Cir. 2005)). The Court agrees.

conflict, and erroneously relied upon, between the VE's testimony regarding the statistical numbers in the nation and the DOT, at step five. The Court thus finds that ALJ Leppala's determination that a significant number of jobs were available to Plaintiff in the national economy is not supported by substantial evidence. The Court further finds on harmless error review that had ALJ Leppala identified the conflict, obtained a reasonable explanation for the conflict, and explained how the conflict was resolved in his decision, then he may have found Plaintiff not disabled. Accordingly, remand of this case is required.

## V.     DISCUSSION

### A.     The ALJ Failed to Resolve an Apparent Conflict Before Relying on the VE Evidence to Find No Disability

The burden shifts to the Commissioner at step five to show with substantial evidence that sufficient jobs exist in the national economy for a person with the claimant's impairments, age, education, and work experience. *See Jensen v. Barnhart*, 436 F.3d 1163, 1168 (10th Cir. 2005); *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). An ALJ may rely on a vocational expert's testimony to show substantial evidence. *Biestek*, 139 S. Ct. at 1157. The hypothetical posed to the vocational expert "must reflect with precision all—and only—the impairments and limitations borne out by the evidentiary record." *Rivera v. Berryhill*, 242 F. Supp. 3d 1226, 1237 (D.N.M. 2017) (citing *Grotendorst v. Astrue*, 370 Fed. Appx. 879, 883 (10th Cir. 2010)); *see Thompson v. Colvin*, 551 F. App'x 944, 949 (10th Cir. 2014). The vocational expert's response to a hypothetical reflecting all impairments meets the substantial evidence standard for the ALJ's disability decision. *Rivera*, 242 F. Supp. 3d at 1237 (internal citation omitted).

However, an ALJ is required to "investigate and elicit a reasonable response for any conflict between the [DOT] and [VE] before the ALJ may rely on the [VE] as substantial evidence

to support a determination of non-disability." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). In that regard, SSR 004p provides:

> before relying on [VE] . . . evidence to support a disability determination or decision, our adjudicators must: Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [VE] . . .and information in the [DOT] . . . and [e]xplain in the determination or decision how any conflict that has been identified was resolved.

SSR 004p, 2000 SSR LEXIS 8, 2000 WL 1898704, at *1 (Dec. 4, 2000). Further, if an "apparent unresolved conflict" does exist between the [VE] evidence and the DOT, the ALJ must obtain a reasonable explanation for the conflict before relying on the [VE's] testimony to support a decision regarding disability. *Id.* Even if an ALJ fails to ask about potential conflicts, however, the oversight is harmless if there is no actual conflict between the VE's testimony and the DOT. *Poppa v. Astrue*, 569 F.3d 1167, 1174 (10th Cir. 2009) (collecting cases).

Here, ALJ Leppala failed to resolve the apparent conflict between the VE's testimony regarding statistical numbers in the national economy and the correlating DOT codes. The VE testified that there were 20,000 national jobs for "Production workers" and 5,500 national jobs for "Production inspectors." (AR at 59). The VE, however, testified to DOT numbers that did not correlate to the specific jobs she identified as "Production worker" and "Production inspector." (*Id.*); *see also* (Doc. 21 at 10-11) (citing https://occupationalinfo.org/dot_search.html (last visited March 23, 2026); https://occupationalinfo.org/73/739687182.html (last visited March 23, 2026)). The VE further testified that her responses to the ALJ's hypotheticals were "consistent with the DOT." (AR at 60). In his decision, ALJ Leppala stated that he "determined' the VE's testimony as to the three alternative jobs was "consistent with the information contained in the [DOT]" in compliance with SSR 004p. (AR at 20). Respectfully, it is questionable what steps ALJ Leppala actually took to determine whether the VE's testimony was truly *consistent* with the DOT. A

11

Google search of the DOT numbers demonstrates that they do not correspond to the positions in which the VE based her testimony. And, in turn, casting doubt on whether "the VE's sources' numbers can necessary be relied upon directly or without further analysis." *Milner v. Kijakazi*, No. CV 20-1016 KK, 2022 WL 1125402, at *10 (D.N.M. Apr. 15, 2002) (noting VEs "must use some method to determine how many of the jobs are for a specific DOT code.") To this point, Plaintiff asserts that *if* the VE intended for her testimony to refer to "broad descriptions" rather than individual DOT codes, as the Commissioner argues, then the number of jobs in the national economy are significantly reduced. (Doc. 27 at 4-5). This is because the VE's data (25,500 combined jobs for the two occupations at issue) shows "numbers for aggregate jobs in the nation and not for individual DOT codes." *Milner*, 2022 WL 1125402, at *10. The Court agrees.

VE's are required to provide expert analysis. *Id.* (citing *Chavez v. Berryhill*, 895 F.3d 962, 969 (7th Cir. 2018) ("The use of one system to supply the job titles and another to provide the number of jobs creates a matching problem: a one-to-one correlation does not exist."); *Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) ("The whole point of vocational testimony is to go beyond facts already established through publications eligible for judicial or administrative notice and provide an alternative avenue of proof.")). But, it falls on the ALJ to "identify" conflicts between VE's expert analysis and the DOT codes and then "obtain a reasonable explanation" for the conflict "*before*" relying on the VE evidence. *See* SSR 004p. This was not done here. As such, the ALJ erred in failing to resolve the apparent conflict and improperly relied on the VE's testimony for the number of national jobs pertaining to "Production workers" and "Production inspectors," as substantial evidence to support a determination of no disability.

**B.      The ALJ Was Not Required to Conduct a *Trimiar* Analysis**

Assuming, *arguendo*, the VE's data was for the correct individual DOT codes, the ALJ

was not required to perform a *Trimiar* analysis to establish that the total national job number of 35,000 was significant. In *Trimiar*, the issue was whether 650 to 900 jobs existing in the region constituted a "significant number" for purposes of the statute. 966 F.2d at 1330 (citing 42 U.S.C. § 423(d)(2)(A) (1991)). The Tenth Circuit listed "several factors" borrowed from the United States Court of Appeals for the Eighth Circuit that "go into the proper evaluation of significant numbers." *Id.* (quoting *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988)). Those factors included (1) the level of claimant's disability; (2) the reliability of the vocational expert's testimony; (3) the distance claimant is capable of traveling to engage in the assigned work; (4) the isolated nature of the jobs; and (5) the types and availability of such work. Id. With those factors in mind, the Tenth Circuit ultimately determined that substantial evidence supported the ALJ's decision. *Id.* at 1332.

In subsequent cases, the Tenth Circuit has offered guidance on when those factors apply. In *Raymond v. Astrue*, 621 F.3d 1269, 356 Fed. Appx. 173 (10th Cir. 2009), the question before the Court was whether or not the job of rental clerk existed in significant enough numbers.[4] *Id.* at 177. In reliance on *Trimiar*, the claimant argued that a significant number of jobs must exist in the regional economy and "that the ALJ should have engaged in a multi-factor analysis" to make that assessment. 621 F.3d at 1274, n. 2. The Tenth Circuit rejected the claimant's argument, holding that the controlling statutes, federal regulations, and case law all indicate that the proper focus is generally on jobs in the national, not regional, economy. *Id.* The Court also distinguished the facts in *Trimiar* and noted that *Trimiar* does not hold that only regional jobs are relevant, or that a court must engage in a factorial analysis when the number of jobs available is much larger than the number of jobs that were available in *Trimiar*, *i.e.*, 650 to 900. *Id.* at 178, n. 2.

This District, as the Commissioner points out, has taken this direction to mean "that the

---

[4] The Court found it was undisputed "that there are some 1.34 million rental clerk jobs available in the national economy and 385 in the New Mexico economy." *Raymond*, 621 F.3d at 1274.

*Trimiar* analysis does not extend to the question of whether there are significant numbers of nationally available jobs." *Rodriguez v. Berryhill*, 2018 WL 1627209, at *5 (D.N.M. Mar. 31, 2018) (internal quotation marks and citation omitted). Indeed, "the multi-factorial analysis required by *Trimiar* focuses on factors relevant in analyzing the true availability of local job opportunities on a more particularized inquiry as to the specific claimant under consideration." *Id.* (alteration, internal quotation marks and citation omitted). "Thus, where the focus is on the national availability of jobs[,] the particularized *Trimiar* inquiry would confuse the issues." *Id.* (alteration, omission, internal quotation marks, and citation omitted). The Court is guided by this standard and finds no error in the ALJ not conducting a *Trimiar* analysis.

### C. The Error Was Not Harmless

The question that remains, therefore, is whether the ALJ's error in failing to resolve the apparent conflict between the VE's testimony and the DOT, the result of which was inaccurate evidence used in the ALJ's finding of no disability, is harmless. The Administration's legal error, in the context of appeals under 42 U.S.C. § 405(g), is harmless when the Court can confidently determine that no reasonable administrative factfinder, following the correct analysis, could have resolved the matter any other way. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir. 2005). The Court cannot find ALJ Leppala's error harmless. Had he identified the conflict in the VE's expert analysis and the DOT codes, obtained a reasonable explanation for the conflict before relying on the VE evidence, and explained how the conflict was resolved,[5] ALJ Leppala may have found that Plaintiff could not sustain employment. This would have required ALJ Leppala to find Plaintiff disabled. The Court thus remands the case for rehearing and reconsideration.

---

[5] *See Posada v. Kijakazi*, 2023 U.S. Dist. LEXIS 152251, *22, 2023 WL 5526413 (D.N.M. Aug. 28, 2023) (finding no violation of SSR 004p because the ALJ asked the VE in a post-hearing interrogatory to resolve a conflict between the VE's testimony and the DOT, and the ALJ cited the interrogatory response in her decision denying disability) (citing *Haddock*, 196 F.3d at 1091; SSR 004p, 2000 SSR LEXIS 8, 2000 WL 1898704, at *1).

### D.   Remaining Claims

Plaintiff advances an additional arguments in support of her Motion. *See* Section IV. The Court declines to address Plaintiff's remaining objections because they may be affected by the ALJ's treatment of the case on remand. *See Watkins v. Barnh*art, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

## VI.   CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiff Alexandra M.'s ("Plaintiff") Motion to Reverse and Remand to Agency with Supporting Memorandum, (Doc. 21), is **GRANTED**. **IT IS FURTHER ORDERED** that the Commissioner's final decision is **REVERSED** and this matter is **REMANDED** for further proceedings consistent with this Memorandum Opinion and Order.

_____

**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**